IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VORTEXA INC.,<br><br>　　　　Plaintiff,<br><br>V.<br><br>JOSEPH CACIOPPO, an individual,<br><br>　　　　Defendant. | Case No. 1:24-cv-2065<br><br>**COMPLAINT** |

　　　　Plaintiff Vortexa Inc. ("Vortexa" or the "Company"), by and through its undersigned counsel, by way of Complaint against Defendant Joseph Cacioppo ("Cacioppo" or "Defendant"), alleges as follows:

## NATURE OF ACTION

　　　　1.　　This is a case about Cacioppo's flagrant violation of his noncompetition covenant by accepting employment with Vortexa's chief competitor, Kpler, Inc. ("Kpler").

　　　　2.　　Cacioppo is Vortexa's former Sales Director. During Cacioppo's employment with Vortexa, he developed many high-value customers for Vortexa in its new market segment related to financial services firms and became extremely knowledgeable about Vortexa's entire product portfolio across all areas the Company services. Cacioppo was privy to Vortexa's most valuable and sensitive confidential information, including Vortexa's plans and strategies related to its products and services.

　　　　3.　　In connection with Cacioppo's employment with Vortexa, Cacioppo agreed to certain restrictions on his post-employment activities, including not to work for one of Vortexa's few competitors for twelve months after his employment ended.

　　　　4.　　Cacioppo abruptly resigned without notice in January 2024 and, upon information and belief, began working for Kpler in or about February 2024 in clear violation of his noncompetition covenant.

5. Cacioppo took every opportunity to hide from Vortexa his upcoming competitive employment and gain an unfair advantage over Vortexa. Shortly before he resigned from Vortexa, Cacioppo viewed extremely sensitive commercial information for which Cacioppo had no legitimate business need at that time. He then resigned without any notice, and when his supervisor noted he could not work for a competitor, Cacioppo, rather than admit he was going to work for Kpler, instead stated he would not be working in sales, leaving Vortexa with the incorrect impression that Cacioppo was leaving the industry entirely. Cacioppo then ignored his resignation paperwork with Vortexa and failed to ever notify Vortexa that he had accepted employment with Kpler, or provide the position he expected to hold or a general description of his duties and responsibilities, as was contractually obligated of him. To date, Cacioppo has not even updated his LinkedIn profile to reflect his new employment.

6. Cacioppo's employment with Kpler appears to be part of a concerted effort on Kpler's part to raid Vortexa, regardless of any contractual obligations to which Vortexa's employees are bound. Vortexa seeks to hold Cacioppo to his contractual obligations.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, Cacioppo works in this District and the events and omissions giving rise to the claims asserted in the Complaint occurred in this District.

9. This Court has personal jurisdiction over Cacioppo because, upon information and belief, Cacioppo is domiciled in New York, Cacioppo entered into the contract at issue while in New York, and Cacioppo breached the contract at issue while working in New York. Cacioppo also consented to personal jurisdiction in New York.

## PARTIES

10. Vortexa is incorporated in Delaware. Vortexa's principal place of business is in London, England. Vortexa provides market-leading real-time data and advanced analytics for energy and freight markets. Vortexa has an expansive portfolio of services focusing on crude oil, refined products, LPG, and LNG across all vessel classes.

11. On information and belief, Cacioppo is a citizen of the State of New York and resides at 255 Ryder Road, Manhasset, NY 11030.

## FACTS

12. Cacioppo joined Vortexa in September 2022 as the Company's Sales Director working in New York, New York.

13. In connection with accepting Vortexa's offer of employment and beginning his employment with Vortexa, Cacioppo executed an At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement (the "Confidentiality Agreement"), and thereafter continued his at-will employment with Vortexa under the Confidentiality Agreement.

14. As Vortexa's Sales Director, Cacioppo was provided a generous base salary, the opportunity to double his base salary each year by earning additional variable compensation, and a sizeable stock option grant.

15. In consideration of the Company's willingness to hire Cacioppo, provide Cacioppo with the compensation and equity described above, and allow Cacioppo to access and use Vortexa's Confidential Information (as defined in the Confidentiality Agreement) during his employment, Cacioppo agreed to certain restrictive covenants.

16. In particular, Cacioppo agreed that for a period of twelve months following the termination of his employment, he would not serve as an employee of "any business whose business, products or operations are in any respect involved in the Covered Business" (the "Noncompete"). The Confidentiality Agreement defines "Covered Business" as "any business in which the Company is engaged, or any service that the Company provides."

17. The Noncompete applies only in the "Territory," which is defined in the

Confidentiality Agreement as "(i) all counties in the State of New York; (ii) all other states of the United States of America in which the Company provided goods or services, had customers, or otherwise conducted business at any time during the two-year period prior to the date of the termination of [Cacioppo's] relationship with the Company; and (iii) any other countries from which the Company maintains non-trivial operations or facilities, provided goods or services, had customers, or otherwise conducted business at any time during the two-year period prior to the date of the termination of [his] relationship with the Company."

18. Kpler bills itself as one of the world's leading providers of technology-led data, analytics, and market insights focused on the energy and shipping markets.

19. Kpler competes directly with Vortexa in offering data analytics software to the energy transportation industry, the field in which Cacioppo worked while at Vortexa. Accordingly, Kpler constitutes a "Covered Business" under the Confidentiality Agreement.

20. As part of the Confidentiality Agreement, Cacioppo also agreed that "during and after [his] employment with the Company, [he] will hold in the strictest confidence and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information." Company Confidential Information includes "any and all non-public information that relates to the actual or anticipated business and/or products, research or development of the Company, . . . including, but not limited to, research, product plans, or other information regarding the Company's products or services and markets therefor, customer lists and customers".

21. While employed by Vortexa, Cacioppo was privy to, and helped develop, valuable confidential and proprietary information, including, but not limited to, Vortexa's customer data, prospects, strategic plans, product development information, marketing plans, product roadmaps, future product releases and specifications, sales forecasts and pipeline information, deal pricing information, product testing information, product implementation experience, product deficiencies, plans to address such deficiencies, planned growth areas, target markets, timetables, financial and budgetary information, technological requirements and customer specifications,

customer sales leads, purchasing time frames, customer preferences, requests and feedback, and current and past opportunities within each customer.

22. On January 26, 2024, Cacioppo informed his manager at Vortexa, Cosmo Kedros, that he was resigning from his employment effective immediately. In discussions about Cacioppo's resignation, Kedros told Cacioppo that he hoped Cacioppo was not leaving Vortexa to go work for a competitor. Cacioppo did not respond directly to Kedros' comment, instead assuring him that he was no longer going to be working in sales. Cacioppo's response left Vortexa with the impression that he was not going to a competitor and was instead leaving the industry to return to his former profession as a securities broker in the financial services industry.

23. Thereafter, Vortexa asked Cacioppo to sign resignation paperwork confirming, among other things, the details of his resignation and that he returned all Vortexa property and confidential information. Cacioppo ignored the resignation paperwork and never signed it.

24. In the Confidentiality Agreement, Cacioppo agreed that "[s]hould [he] obtain other employment immediately following the termination of [his] relationship with the Company or within twelve (12) months immediately following the termination of [his] relationship with the Company," he would "provide written notification to the Company as to the name and address of [his] new employer, the position that [he] expect[s] to hold, and a general description of [his] duties and responsibilities, at least three (3) business days prior to starting such employment."

25. Cacioppo failed to notify the Company that he had accepted employment with Kpler, or provide the position he expected to hold or a general description of his duties and responsibilities, within the time required by the Confidentiality Agreement. Cacioppo still has not provided Vortexa with any description of his role with Kpler.

26. In fact, the Company only learned that Cacioppo was possibly working for Kpler approximately a month after Cacioppo's resignation when it heard third-hand about his possible competitive employment.

27. Vortexa then conducted a forensic review of Cacioppo's digital activity in the weeks prior to his resignation. The forensic audit revealed that Cacioppo viewed extremely

sensitive commercial files, including, but not limited to, a document with competitive intelligence on Vortexa and contracts and other information about Vortexa clients for which he lacked any legitimate business purpose to view at that time. The files that Cacioppo viewed contain Vortexa Confidential Information that will be incredibly useful to Kpler.

28. Vortexa's counsel sent Cacioppo a letter on March 1, 2024 reminding him of his contractual obligations to Vortexa and the consequences for his breaches. The letter also sought Cacioppo's assurance that he was not working for Kpler and would not be doing so during the term of the Noncompete.

29. Cacioppo's counsel responded by letter on March 8, 2024 implying that Cacioppo was employed by Kpler. This was the first time that either Cacioppo or his counsel informed Vortexa that he may be working for Kpler.

30. After Vortexa's counsel sent another letter to Cacioppo's counsel on March 12, 2024, only then, in response on March 15, 2024, did Cacioppo's counsel directly confirm that Cacioppo was working at Kpler as its Director, Market Engagement, US.

31. Upon information and belief, Cacioppo has been working at Kpler for over a month and, in a concerted effort to hide his breach, Cacioppo has not updated his LinkedIn account to reflect his new employment and Cacioppo does not appear on Kpler's website.

32. Cacioppo's employment with Kpler is a clear breach of the Noncompete since Kpler constitutes a "Covered Business" and, upon information and belief, Cacioppo is working for Kpler in the "Territory." Cacioppo has not even denied that his employment with Kpler is prohibited by the Noncompete.

## FIRST CAUSE OF ACTION
**(Breach of Contract – Confidentiality Agreement)**

33. Vortexa re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 32 of this Complaint.

34. As a condition of Cacioppo's employment with Vortexa, receipt of the compensation from Vortexa, and access to Confidential Information (as defined in the

Confidentiality Agreement), Cacioppo signed the Confidentiality Agreement in connection with the start of his Vortexa employment. The Confidentiality Agreement is an enforceable contract.

35. To the extent that Vortexa had any obligations under the Confidentiality Agreement, Vortexa complied fully with and fulfilled all such obligations.

36. The length and geographic scope of the Noncompete are reasonable in light of Vortexa's protectable interests, including, but not limited to, the protection of its Confidential Information and customer relationships and goodwill.

37. Cacioppo has his Confidentiality Agreement by, among other things, becoming employed by Kpler in the "Territory" in violation of the Noncompete and failing to inform Vortexa that he was employed by Kpler within three business days before the start of his employment or of the general description of his job duties and responsibilities in his role with Kpler.

38. Vortexa has sustained, and will sustain, damages as a direct and proximate result of Cacioppo's breaches of the Confidentiality Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Vortexa prays for judgment in its favor and against Defendant Joseph Cacioppo, inclusive as follows:

1. Awarding compensatory damages in an amount to be determined at trial, including, but not limited to, the damages proximately caused by Cacioppo's breaches of the Confidentiality Agreement;

2. Awarding interest at the maximum legal rate on all sums awarded;

3. Awarding reasonable attorneys' fees as permitted by law and the Confidentiality Agreement;

4. Awarding all costs of suit herein; and

5. Awarding such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Vortexa hereby demands a jury trial on cause of action set forth above.

Dated: March 19, 2024

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *Matthew D. Gorman*
Matthew D. Gorman (#MG1530)
One Boston Place
201 Washington Street, Suite 2000
Boston, Massachusetts 02108
Telephone: (617) 598-7800
Facsimile: (866) 974-7329
Email: mgorman@wsgr.com

Heather G. Diles (#5584966)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: hdiles@wsgr.com

*Counsel for Plaintiff Vortexa Inc.*